107 F.3d 873
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Thomson CURRIE, Plaintiff-Appellant,
v.
Marvin T. RUNYON, in his capacity as Postmaster General of
the United States, Defendant-Appellee.
 No. 96-2449.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 28, 1997.
Decided Feb. 18, 1997.
 
 Before BAUER, KANNE and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Thomson Currie is an employee of the United States Postal Service ("postal service"), who brought this suit against the postal service under Title VII claiming that he was not promoted to the position of account representative due to his gender. 42 U.S.C. § 2000e. The postal service moved for summary judgment on the ground that there were legitimate, non-discriminatory reasons why Currie was not selected for the account representative position. The district court granted summary judgment in favor of the postal service. Currie appeals. Because the postal service's promotional decision was based on factors unrelated to gender, we affirm.
 
 
 2
 Currie has been a United States Postal employee since 1961. He has held many positions throughout the course of his career including window clerk, mailing requirements clerk, superintendent of postal operations, acting manager of a postal station, clerk in charge of the Illinois Fairgrounds Station, and supervisor of mailing. In 1992, Currie applied for the position of account representative in the Springfield, Illinois, Post Office. The vacancy announcement for this position directed employees to apply by completing and submitting Postal Service Form 991 ("PS Form 991"). Three individuals comprised the review committee that evaluated the ten applicants, which included six women and four men.
 
 
 3
 The review committee selected four finalists to be interviewed based solely on the PS Form 991. All of the finalists were women. According to the chair of the review committee, Bill Brown, the male applicants were not selected to be interviewed because they were less qualified. He also stated that the chosen candidates were more thorough in their applications. This information is corroborated by Currie himself, who admitted that he did not have enough time to do a good job on his application. Brown also added that the applicant who ultimately got the position was the only applicant that had any previous experience as an account representative. Other members of the review selection committee, Bethel Giberson and Constance Adams, corroborate Brown's contentions that the male applicants were not as qualified as the female applicants and that they considered only the applicants' qualifications as reflected on the PS Form 991.
 
 
 4
 After the committee narrowed the field to the four finalists, the selecting official interviewed the finalists, promoting Kimberly Haney to the account representative position. Shortly thereafter, Currie filed informal and formal Equal Employment Opportunity ("EEO") complaints for postal employees. Currie also filed a complaint with the United States District Court alleging gender discrimination. The postal service moved for summary judgment, conceding that Currie had established a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). However, the postal service contended that Currie's prima facie case was rebutted by the review committee's legitimate, non-discriminatory reasons that the four women selected for the interviews were more thorough in their applications and more qualified than the male applicants.
 
 
 5
 The district court granted summary judgment in favor of the postal service on the basis that Currie had failed to raise as a genuine issue of material fact whether the postal service's reasons for not selecting him were pretextual. This court reviews the grant of summary judgment de novo, applying the same standards as the district court. Smart v. Ball State Univ., 89 F.3d 437, 440 (7th Cir.1996). In deciding a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. Griffin v. Thomas, 929 F.2d 1210, 1212 (7th Cir.1991). This standard is applied with added rigor where intent and credibility are crucial issues in employment discrimination cases. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993).
 
 
 6
 To succeed on a claim of gender discrimination, a plaintiff may meet his burden of proof by establishing intentional discrimination either through direct or circumstantial evidence of discriminatory intent. Helland v. South Bend Community School Corp., 93 F.3d 327, 329 (7th Cir.1996). If direct evidence is unavailable, the plaintiff may establish intentional discrimination through the indirect, burden-shifting method of proof established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). In order to prevail under the McDonnell Douglas burden-shifting approach, the plaintiff must initially establish a prima facie case of discrimination by a preponderance of the evidence. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). Here, the postal service concedes that Currie has established a prima facie case of gender discrimination.
 
 
 7
 Once the plaintiff has established a prima facie case, the burden of production shifts to the employer to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. If the employer makes this showing, the plaintiff has the ultimate burden of persuasion and must demonstrate by a preponderance of the evidence that the employer's stated reason was but mere pretext for discrimination.
 
 
 8
 Here, the issue has been narrowed to the question of pretext, i.e., did the postal service rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for not promoting Currie and was it countered by the preponderance of evidence that it was mere pretext? In order to survive summary judgment Currie must counter the postal service's factual assertions with materials of evidentiary quality, e.g., affidavits or depositions, to create an issue of fact as to whether the postal service's reasons were pretextual. Russell v. Acme-Evans Co., 51 F.3d 64, 67 (7th Cir.1995).
 
 
 9
 Pretext is more than a mistake, it "means a lie, specifically a phony reason for some action." Id. at 68. A showing that the employer's proffered reasons are pretextual may be demonstrated by establishing: (1) the reasons have no basis in fact; (2) the reasons were not the actual motivation of the employment decision; or (3) the reasons were insufficient to motivate the employment decision. Wolf v. Buss (America), Inc., 77 F.3d 914, 919 (7th Cir.), cert. denied, 117 S.Ct. 175 (1996). Additionally, this court has held that: "Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter." Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir.1996).
 
 
 10
 Currie contends that the postal service's decision not to interview him for the account representative position has no basis in fact and is thus pretextual. The postal service counters this assertion by contending that through the bifurcated selection process, the best qualified finalists were chosen for the interview stage and ultimately the best applicant was hired after the interviewing process. Because Currie was eliminated at the first step of the hiring process, we look to the review committee's selection of the four finalists to discern if the committee's decision had a factual basis.
 
 
 11
 The review committee based its selection of the finalists to be interviewed solely on the PS Form 991. In his EEO Investigative Affidavit, the chair of the review selection committee, Bill Brown, stated that the male applicants were not selected for the interviewing stage because they were less qualified. Brown also stated that the successful applicants' forms were more thoroughly filled out. This assertion is corroborated in Currie's situation, as he admitted that he did not have enough time to do a good job on the PS Form 991. Brown also stated that the applicant who ultimately received the promotion was the only applicant that had any experience as an account representative. The other review committee members corroborate Brown's statements.
 
 
 12
 Currie submitted the four finalist's PS Forms for comparison. Currie argues that he had over 20 years of experience in areas which were relevant to the account representative position, whereas the other applicants had only limited experience. However, Currie's claims about the other applicants' deficiencies of skill and experience fail to rise to the level of alleging factual assertions that the postal service lied or gave a "phony reason" for interviewing the four women.
 
 
 13
 What the evidence supports is that the review committee examined only the applicants' PS Forms in the first step of the hiring process and that the forms do not reveal that Currie was equal to, or superior to, the other applicants. In fact, Currie's PS Form 991 is not as complete as the four female applicants. For example, Currie did not follow the directions of how to answer the questions in the proper format. Currie also admitted at his deposition that he did not have enough time to properly complete the form. Thus, comparison of the PS Forms does not warrant the conclusion that the review committee's decision as to who would be interviewed was a "phony reason" and not based on fact.
 
 
 14
 Currie also claims that in a five year period, only women were selected to fill three positions that became vacant in the marketing area of the Springfield facility. He asserts that this comparison bolsters the inference that gender may have been a determinative factor in the selection decision. However, this court has concluded that such information is not enough to show an inference of discrimination. In Kuhn, 78 F.3d at 332, this court stated: "A plaintiff who wants a court to infer discrimination from the employer's treatment of comparable cases has to analyze a goodly sample. One is an anecdote, and several cases are several anecdotes. Judges do not find discrimination on such a thin basis." Currie tries to distinguish his case from Kuhn because it is an age discrimination claim, involving only one younger person as a comparison. Here, Currie reasons that three promotional decisions infer discrimination. However, three promotions from 1987 to 1992 are "several anecdotes" and not a strong enough comparative basis for a finding of discrimination. See Kuhn, 78 F.3d at 332.
 
 
 15
 Last, Currie asserts that favoritism was shown to the woman who was promoted. Currie contends that this favoritism suggests that a discriminatory animus motivated the promotion decision. However, this assertion was made in his "Summary of the Argument" section in his appellate brief, yet was not argued, nor substantiated in the "Argument" part of his brief. It is well-established that "[i]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." Sanchez v. Miller, 792 F.2d 694, 703 (7th Cir.1986), cert. denied, 479 U.S. 1056 (1987). Therefore, Currie's favoritism argument is waived. See United States v. Williams, 877 F.2d 516, 518-19 (7th Cir.), cert. denied, 493 U.S. 863 (1989).
 
 
 16
 In sum, Currie does not proffer sufficient evidence to prove that the postal service's reasons for not promoting him were mere pretext. Because the postal service's promotional decision was based on factors unrelated to gender, the district court is affirmed.
 
 
 17
 AFFIRMED.